UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

MONICA MITCHELL, ET AL.                                CIVIL ACTION

v.                                                     NO. 19-13298

PARISH OF JEFFERSON, ET AL.                            SECTION "F"


ORDER AND REASONS

Before the Court is the defendants' Rule 12(b)(6) motion to dismiss the plaintiffs' complaint. For the reasons that follow, the motion is construed as a motion for partial dismissal of the complaint and is GRANTED.

**Background**

Three female fire dispatchers say that a local fire department discriminated against them on the basis of sex and then retaliated against them for exposing a male supervisor's sexual harassment of female employees. This lawsuit followed.

The plaintiffs in this sex-discrimination litigation are Monica Mitchell, Melissa Burkett, and Tammy Cavanaugh, veteran dispatchers for the Jefferson Parish East Bank Consolidated Special Service Fire Protection Bureau. They work in the Emergency Communications Division, known as "Fire Alarm." They do what their job title suggests: answer emergency calls and direct the response

1

of fire personnel. Robert Funk leads Fire Alarm and holds the title of Fire Communications Supervisor. He reports to the Bureau's Chief, David Tibbetts.

For years, Funk has allegedly denied female employees the training and equipment he provides male employees. The plaintiffs say this discrimination has stunted their professional growth. It has also placed the public at risk. Firefighters too. For at any given moment, Fire Alarm's female dispatchers allegedly lack the training and equipment they need to do their jobs.

But sex discrimination is just one reason the Bureau is an allegedly unpleasant workplace—pervasive sexual harassment is another. For years, the plaintiffs say, Funk has taken female dispatchers off-premises for extended periods of time, leaving Fire Alarm inadequately staffed. Funk has also allegedly "grant[ed] perks" to dispatchers who accept his advances.

After Funk made one particularly "inappropriate and unwanted" advance, Mitchell and Burkett allegedly complained to then-Chief Joseph Greco. Funk learned of the complaint and allegedly retaliated against Mitchell and Burkett in various ways: "subjecting them to hostile, intimidating language," including "misogynistic and racial slurs"; "continuing to deny them necessary training and resources"; and "selectively enforcing

Bureau policies on mandatory overtime and emergency/sick leave in a punitive manner."

Tibbetts succeeded Greco as Fire Chief. Hoping the new chief would do what his predecessor would not, the plaintiffs told Tibbetts about Funk's misconduct and urged him to investigate. He declined. So, they filed complaints with the Equal Employment Opportunity Commission. In response, Tibbetts and Funk allegedly initiated "malicious and baseless disciplinary proceedings" against Burkett. Threats followed. According to the plaintiffs, Tibbetts said he would strip Fire Alarm employees of civil service protections if they "continued to exercise their rights under Title VII."

Aiming to secure those rights, the plaintiffs sued Jefferson Parish, the Bureau, Tibbetts, and Funk in this Court. Each plaintiff alleges sex-discrimination, retaliation, and hostile-work-environment claims against Jefferson Parish, the Bureau, and Tibbetts, in his official capacity. And one plaintiff, Melissa Burkett, alleges 42 U.S.C. § 1983 First Amendment retaliation claims against Jefferson Parish and Tibbetts and Funk, in their individual and official capacities.

Now, the defendants move to dismiss the plaintiffs' complaint for failure to state a claim. See FED. R. CIV. P. 12(b)(6). The motion is not styled a partial motion to dismiss, and the

3

defendants say they seek an order "dismissing the plaintiffs' complaint with prejudice." But the defendants do not address the plaintiffs' Title VII and Louisiana Employment Discrimination Law claims against Jefferson Parish and the Bureau. So, the Court construes the motion as one for *partial* dismissal of the plaintiffs' complaint.

I.

A complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. FED. R. CIV. P. 8(a)(2). A party may move for dismissal of a complaint that fails this requirement. See FED. R. CIV. P. 12(b)(6). Such motions are rarely granted because they are viewed with disfavor. Leal v. McHugh, 731 F.3d 405, 410 (5th Cir. 2013) (quoting Turner v. Pleasant, 663 F.3d 770, 775 (5th Cir. 2011)).

In considering a Rule 12(b)(6) motion, the Court "accept[s] all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff." Thompson v. City of Waco, Tex., 764 F.3d 500, 502 (5th Cir. 2014) (citing Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys, 675 F.3d 849, 854 (5th Cir. 2012) (en banc)). Conclusory allegations are not well pleaded and, consequently, are not accepted as true. See Thompson, 764 F.3d at 502-03 (citing Iqbal, 556 U.S. at 678).

To overcome a Rule 12(b)(6) motion, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009) (quoting Iqbal, 556 U.S. at 678). A claim is facially plausible if it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

"A complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations[.]" Twombly, 550 U.S. at 555. But it must contain "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Id. at 555. Ultimately, the Court's task is "to determine whether the plaintiff stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." Thompson, 764 F.3d at 503 (citation omitted).

II.

Jefferson Parish, Tibbetts, and Funk contend that Melissa Burkett fails to state 42 U.S.C. § 1983 First Amendment retaliation claims against them.

A.

Section 1983 creates a cause of action against a person who violates another's constitutional rights while acting under color of state law. 42 U.S.C. § 1983. Burkett says Jefferson Parish,

5

Tibbetts, and Funk violated her First Amendment rights by retaliating against her for reporting sexual harassment and "dysfunction" within Fire Alarm.

The First Amendment protects the right of a public employee to speak "as a citizen" on "matters of public concern." Garcetti v. Ceballos, 547 U.S. 410, 417 (2006). To decide if that right has been violated, courts ask a threshold question: Was the employee's speech made "pursuant to the employee's duties or as a citizen on a matter of public concern?" Cutler v. Stephen F. Austin State Univ., 767 F.3d 462, 469 (5th Cir. 2014). Whether an employee spoke as a citizen depends on several factors: "job descriptions, whether the employee communicated with coworkers or with supervisors, whether the speech resulted from special knowledge gained as an employee, and whether the speech was directed internally or externally." Johnson v. Halstead, 916 F.3d 410, 422 (5th Cir. 2019) (citation omitted). If a court's consideration of these factors causes it to conclude that the employee spoke as a citizen, the court must then balance the employee's speech interest against the employer's interest "in promoting the efficiency of the public service it performs." Cutler, 767 F.3d at 469 (citation omitted).

Ultimately, to state a First Amendment retaliation claim in the employment context, a plaintiff must allege four elements: (1) she suffered an adverse employment action; (2) her speech involved a matter of public concern; (3) her interest in speaking outweighed

6

the governmental defendant's interest in promoting efficiency; and (4) the protected speech motivated the defendant's conduct. Kinney v. Weaver, 367 F.3d 337, 356 (5th Cir. 2004) (en banc).

Jefferson Parish, Tibbetts, and Funk point to these elements and submit that Burkett fails to allege two of them: (1) that she suffered an adverse employment action; and (2) that she engaged in protected speech. The Court considers each element in turn.

1.

The first element requires Burkett to allege an adverse employment action. This requirement restricts the range of conduct actionable under a First Amendment retaliation theory. See Breaux v. City of Garland, 205 F.3d 150, 157 (5th Cir. 2000). Not all speech-chilling acts qualify. Id. at 157. For example, "accusations or criticism," "threats or abusive remarks," and "investigations" do not rise to the level of an adverse employment action. Id. at 157-58. The paradigmatic adverse employment actions are "discharges, demotions, refusals to hire, refusals to promote, and reprimands." Pierce v. Texas Dep't of Crim. Justice, Inst. Div., 37 F.3d 1146, 1149 (5th Cir. 1994). A "campaign of retaliatory harassment" also qualifies, so long as it "rise[s] to

such a level as to constitute a constructive adverse employment action." Colson v. Grohman, 174 F.3d 498, 514 (5th Cir. 1999).[1]

Here, Burkett says the defendants (1) "subjected [her] to numerous, malicious and baseless disciplinary proceedings"; (2) "refused [her] reasonable work-related requests for information"; (3) threatened to remove her "civil service protections"; (4) "subjected [her] to hostile, intimidating language, and misogynistic and racial slurs"; and (5) "selectively enforce[d] Bureau policies on mandatory overtime and emergency/sick leave." These acts should qualify as adverse employment actions, Burkett reasons, because they resemble the "reprimands" that qualify as adverse employment actions under Fifth Circuit case literature.

The Court disagrees. A formal reprimand[2] is an "adverse employment action" because it "goes several steps beyond a criticism or accusation and even beyond a mere investigation; it is punitive in a way that mere criticisms, accusations, and investigations are not." Colson, 174 F.3d at 512 n.7. The acts

---

[1] Because Burkett does not invoke the retaliatory-campaign theory in her opposition papers, the Court does not address whether she has alleged facts sufficient to show a constructive adverse employment action. See Colson, 174 F.3d at 514.

[2] The Fifth Circuit has on occasion distinguished formal reprimands from informal ones. See, e.g., Benningfield, 157 F.3d at 377; Mylett v. City of Corpus Christi, 97 F. App'x 473, 476 (5th Cir. 2004). One opinion suggests that only formal reprimands are actionable. See Colson, 174 F.3d at 512 & n.7.

8

Burkett describes are not functionally equivalent. Each act is either an "abusive remark," a "threat," or an "investigation." Breaux, 205 F.3d at 157. Because none of those acts amounts to an adverse employment action, Burkett fails to state a First Amendment retaliation claim.

2.

Even if Burkett had alleged an adverse employment action, however, her First Amendment retaliation claim would fail: She has not alleged facts showing that she engaged in speech protected by the First Amendment.

A public employee's speech is protected if she "spoke as a citizen on a matter of public concern." Garcetti, 547 U.S. at 418. The second part of that inquiry is straightforward here: public safety is a "public concern," and Burkett spoke on "matter of public concern" when she allegedly reported "dysfunction" within Fire Alarm to her supervisors, Funk and Tibbetts. See Wallace v. Cnty. of Comal, 400 F.3d 284, 289 (5th Cir. 2005). But the inquiry does not end there; Burkett's speech is protected only if it was made "as a citizen."[3] Garcetti, 547 U.S. at 418.

---

[3] The plaintiffs do not address the defendants' contention that Burkett was not speaking "as a citizen" because she complained to her supervisors within the Bureau.

9

It was not. Burkett's speech was "directed internally" and resulted from the "special knowledge" about Bureau operations that she gained as a Bureau employee. Johnson, 916 F.3d at 422. Hers is the sort of up-the-command-chain communication that is routinely denied First Amendment protection. See, e.g., Davis v. McKinney, 518 F.3d 304, 313 n.3 (5th Cir. 2008). Because Burkett was not "speaking as a citizen" at the time she reported the "dysfunction" within Fire Alarm to her supervisors, her speech is not protected, and she fails to state a First Amendment retaliation claim. See Johnson, 916 F.3d at 423.

\* \* \*

Burkett fails to allege facts showing that she suffered an adverse employment action or that she engaged in speech protected by the First Amendment. She thus fails to state a claim.[4] The Court therefore grants the defendants' motion to dismiss Burkett's First Amendment retaliation claims. Because Burkett has not requested leave to amend her complaint to attempt to state plausible First Amendment retaliation claims, the Court assumes that she has

---

[4] Qualified immunity supplies an independent ground for dismissal of Burkett's individual-capacity First Amendment claims against Tibbetts and Funk: Burkett has not alleged facts establishing that either defendant violated a clearly established right. See Shaw v. Villanueva, 918 F.3d 414, 418-19 (5th Cir. 2019).

pleaded her best case and that amendment would be futile. Accordingly, these claims are dismissed with prejudice.

III.

Tibbetts and Funk next contend that the plaintiffs fail to state claims against them under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2—2000e-3, and the Louisiana Employment Discrimination Law, La. Rev. Stat. § 23:332.

A.

Title VII and the Louisiana Employment Discrimination Law create causes of action against "an employer." 42 U.S.C. § 2000e-2(a); La. Rev. Stat. § 23:332(A). Under Title VII, an "employer" is "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person[.]" 42 U.S.C. § 2000e(b). By contrast, the Louisiana Employment Discrimination Law defines "employer" as a person "receiving services from an employee and, in return, giving compensation of any kind to any employee." La. Rev. Stat. § 23:302(2). But the law "appl[ies] only to an employer who employs twenty or more employees[.]" La. Rev. Stat. § 23:302(2).

B.

Invoking these definitions, Tibbetts and Funk say they cannot have Title VII or Louisiana Employment Discrimination Law

11

liability because they are individual employees—not "employer[s]." The Court agrees.[5]

Tibbetts and Funk are individual employees of Jefferson Parish. Neither is an "employer" under Title VII or the Louisiana Employment Discrimination Law. See 42 U.S.C. § 2000e(b); LA. REV. STAT. 23:302(2). Because they are not "employer[s]," they cannot have liability under either statute. See 42 U.S.C. § 2000e-2(a); LA. REV. STAT. § 23:332(A). So, the plaintiffs fail to state Title VII and Louisiana Employment Discrimination Law claims against Tibbetts and Funk. The Court therefore grants the defendants' motion to dismiss these claims with prejudice.

IV.

Finally, the defendants contend that the plaintiffs fail to state claims for punitive damages under the Louisiana Employment Discrimination Law, Title VII, and § 1983.[6] The Court considers each statute in turn.

A.

Louisiana law prohibits the recovery of punitive damages "unless expressly authorized by statute." Ross v. Conoco, Inc.,

---

[5] As do the plaintiffs. In their opposition papers, they concede that they cannot state Title VII or Louisiana Employment Discrimination Law claims against Tibbetts and Funk.

[6] The plaintiffs do not oppose dismissal of their punitive damages claims.

2002-299, p. 14 (La. 10/15/02); 828 So. 2d 546, 555. The relevant statute here, the Louisiana Employment Discrimination Law, expressly authorizes some types of damages: "compensatory damages, back pay, benefits, reinstatement, or if appropriate, front pay, reasonable attorney fees, and court costs." LA. REV. STAT. § 23:303(A). But it says nothing of punitive damages. See id. Because the Louisiana Employment Discrimination Law does not expressly authorize an award of punitive damages in these circumstances, and the plaintiffs have not identified another statute that does, the plaintiffs fail to state a claim for punitive damages under Louisiana law.

B.

A Title VII plaintiff may recover punitive damages "against a respondent (other than a government, government agency or political subdivision)" if she shows that "the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1).

The plaintiffs fail to state punitive damages claims under Title VII against any defendant. Jefferson Parish and the Bureau are political subdivisions not subject to punitive damages under § 1981a(b)(1). So, the plaintiffs cannot state Title VII punitive damages claims against them. See id.; Oden v. Oktibbeha Cnty., Miss., 246 F.3d 458, 465 (5th Cir. 2001). As for Tibbetts and Funk,

the plaintiffs have alleged no specific facts showing that either acted with "malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). Accordingly, any Title VII punitive damages claims against these defendants fail.

C.

To the extent that the plaintiffs intend to state punitive damages claims under § 1983, they fail to do so. Consider first the municipal entities. A § 1983 plaintiff cannot recover punitive damages against municipal entities, like Jefferson Parish and the Bureau, unless Congress specifically provides to the contrary. Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981). Because Congress has not expressed a clear intention to permit punitive damages against municipal entities in the circumstances presented here, any § 1983 punitive damages claims against Jefferson Parish and the Bureau fail as a matter of law. See id. The claims against the individual defendants fare no better. The plaintiffs allege no specific facts establishing that Tibbetts or Funk engaged in conduct "motivated by evil intent" or "demonstrat[ing] reckless or callous indifference to a person's constitutional rights." Williams v. Kaufman Cnty., 352 F.3d 994, 1015 (5th Cir. 2003) (citation omitted).

V.

Accordingly, IT IS ORDERED: that the defendants' Rule 12(b)(6) motion to dismiss is construed as a motion for partial dismissal of the plaintiffs' complaint and is GRANTED. The following claims are DISMISSED with prejudice: the plaintiffs' Title VII and Louisiana Employment Discrimination Law claims against Tibbetts and Funk; all of Burkett's § 1983 First Amendment retaliation claims; and all punitive damages claims. Remaining are the plaintiffs' Title VII and Louisiana Employment Discrimination Law claims against Jefferson Parish and the Bureau.

New Orleans, Louisiana, March 4, 2020

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE